IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CLARK ARMOND,                          )
                                       )
            Petitioner,                )
                                       )   No. 05 C 2553
      v.                               )
                                       )   Judge Mark Filip
GUY PIERCE,                            )
                                       )
            Respondent.                )

MEMORANDUM OPINION AND ORDER DISMISSING
PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is the Petition of Clark Armond ("Petitioner" or "Armond") for a Writ

of Habeas Corpus against Respondent, Guy Pierce, Warden of the Pontiac, Illinois Correctional

Center, challenging the constitutionality of the state court judgment under which Petitioner is

being held. The Court has received Respondent's answer and Petitioner's Reply. For the reasons

stated below, the Petition is denied.

BACKGROUND

Petitioner is imprisoned pursuant to a judgment of the Illinois courts. That judgment

followed a bench trial in which Armond was convicted of armed robbery and aggravated

vehicular highjacking, for which he was sentenced to seventeen years' imprisonment. (D.E. 14,

Ex. D at 1.)[1]

On the evening of November 23, 1996, Carlos Martinez and Renee Anderson went out to

_____

        [1]     The Court has taken the facts from the Illinois appellate court's resolution of
Petitioner's direct and post-conviction appeals. See, e.g., Ashford v. Gilmore, 167 F.3d 1130,
1131 (7th Cir. 1999) (citing 28 U.S.C. § 2254(e)(1)). Docket entries are designated as "D.E.
___," followed by the appropriate district court docket number.

buy some liquor. (*Id.* at 2.) Martinez waited in his automobile near the corner of 69th and Ashland in Chicago, while Anderson went into the liquor store. (*Id.*) While Martinez was waiting for Anderson to return, Petitioner approached Martinez's car, opened the driver's side door, and asked Martinez for money. (*Id.*) When Martinez indicated he had no money, Petitioner pulled a gun from his pocket and pointed it at Martinez. (*Id.*) Petitioner pulled the watch off of Martinez's wrist, took another watch from the dashboard, and retreated from the car. (*Id.*)

When Anderson returned from the liquor store and got into the passenger seat of the car, Petitioner approached the car again, pointed the gun at Anderson, and demanded money from her. (*Id.*) Anderson told Petitioner that she did not have any money, and then began running towards the front of the car. (*Id.*) Petitioner approached her again and asked her if she thought that he would not shoot her. (*Id.*) She returned to the car and gave Petitioner S2 and a piece of jewelry. (*Id.*) After some discussion, during which time Petitioner continued pointing his gun at the couple, Martinez gave Petitioner approximately S83. (*Id.*) Petitioner then stole Martinez's vehicle and drove away in it. (*Id.*) Ms. Anderson and Mr. Martinez notified the police, who later found the stolen car in an alley one block from the scene of the robbery. (*Id.*)

On November 27, 1996, four days after the incident, Anderson spoke with Chicago Police Detective Edward Winstead and gave him the names of Clark or Claude as the possible name of the offender. (*Id.* at 3.) The following day, Anderson viewed an array of photographs and identified Petitioner's picture as that of the robber. (D.E. 14, Ex. D at 3.) On December 7, 1996, both Anderson and Martinez identified Petitioner as the assailant in a line-up. (*Id.*) Detective Winstead testified at trial that both persons unequivocally identified Petitioner as the robber.

2

(*Id.*) Two years after the incident, Anderson testified at trial after having become "a reluctant witness." (*Id.*) At that time, she stated that the man she identified in the line-up (*i.e.,* Petitioner) only looked like the guy who robbed her, and Anderson also testified that she had been drinking on the day of the line-up. (*Id.*) However, at the preliminary hearing in the case, Anderson positively identified Petitioner as the offender, and further testified that she had not been drinking on the day of the hearing. (*Id.*)

Anderson and Martinez further testified that Petitioner had approached each of them on the street near 69th Street after the robbery apologizing for what he had done, offering to repay them, and asking them to drop the charges. (*Id.*) According to Martinez, he had conversations with Petitioner near 69th and Justine sometime around July 1997 and again around July 1998. (*Id.*) According to Anderson, she spoke with Petitioner several times after the incident. She testified that she spoke with him near 69th and Justine sometime during 1997 or 1998. Anderson stated that the conversations may have taken place during June or July, but she could not remember the exact time-frame. (*Id.*) Anderson also testified that after Petitioner told her he would repay her, she received $50 from somebody, but not from Petitioner. (*Id.* at 4.)

Defense counsel cross-examined both Martinez and Anderson regarding the time-frame of their conversations with Petitioner. (*Id.* at 6.) Defense counsel closed the defense case without formally introducing evidence that Petitioner was in custody in the time period during which Anderson and Martinez arguably claimed his admissions and statements reflecting consciousness of guilt took place. (*Id.* at 4.) Nonetheless, in closing argument, defense counsel brought to the trial court's attention that Petitioner was in custody between May 28, 1997, and August 12, 1997, as well as between June 4, 1998 and the start of the trial. (*Id.*) Before rendering the bench verdict, the trial court took judicial notice of the dates reflected in the court

3

orders, which indicated the times when Petitioner was in custody. (*Id.* at 6.)

After deliberating, the trial court found Petitioner guilty of armed robbery and aggravated vehicular hijacking and sentenced him to a term of seventeen years in prison. (*Id.*) In reaching its decision, the trial court acknowledged defense counsel's claim that Petitioner had been in custody during parts of 1997 and 1998, but determined that because neither witness was certain about the exact dates of the conversations with Petitioner, his confinement during parts of those two years did not mean that the alleged conversations never took place. (*Id.*) In the trial court's view, "the evidence was clear and convincing beyond any reasonable doubt that the Defendant [*i.e.*, Petitioner] robbed two people [*i.e.*, Martinez and Anderson]." (D.E. 14, Ex. H (transcript of trial court's rejection of post-conviction petition) at 6.)

On direct appeal, Petitioner sought reversal of his conviction, alleging only that (1) he received ineffective assistance of counsel because his attorney did not present evidence that he was in custody during the time in which his alleged admissions potentially were made to Martinez and Anderson and (2) the statute under which he was sentenced was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (D.E. 14, Ex. A.) The Illinois appellate court considered both of these two claims, rejected them, and affirmed the convictions and sentence. (D.E. 14, Ex. D.) Petitioner filed a petition for leave to appeal with the Illinois Supreme Court presenting the same two issues as he did on direct appeal. (D.E. 14, Ex. E.) The Illinois Supreme Court denied his petition. (D.E. 14, Ex. F.)

Petitioner subsequently filed a post-conviction petition in the state circuit court on February 21, 2002. (D.E. 14, Ex. G.) The circuit court orally denied his petition on March 15, 2002, but it did not issue a written order at that time. (D.E. 14, Ex. P at 4.) On April 1, 2002, before the circuit court issued a written order dismissing the original petition, Petitioner mailed

4

an amended petition (which was substantially different from the original petition) that the court received on April 4, 2002. (D.E. 14, Ex. J.) The next day, the circuit court entered a written order dismissing Petitioner's original post-conviction petition. (D.E. 14, Ex. P at 4.) Two weeks later, the circuit court orally ruled that it was dismissing the amended petition because (1) it was a successive petition and (2) it was frivolous and entirely without merit. (D.E. 14, Ex. K at 9.) The court entered a written order to that effect on April 26, 2002. (*Id.*)

Petitioner appealed the circuit court's denial of post-conviction relief. (D.E. 14, Ex. M.) The Illinois appellate court first determined that the amended petition was not a successive petition (because it was mailed before the trial court's dismissal order was entered) and thus reviewed the amended petition on the merits. (D.E. 14, Ex. P at 6.) The Illinois appellate court affirmed the dismissal of Petitioner's post-conviction plea for relief. (*Id.* at 9-14.)

Petitioner then filed a petition for leave to appeal his post-conviction denial of relief to the Illinois Supreme Court, presenting only his ineffective assistance of counsel claim. (D.E. 14, Ex. Q.) The petition for leave to appeal essentially presented a state law procedural issue—that the lower courts failed to follow Illinois post-conviction procedures by proceeding too quickly to apply the Supreme Court's teaching in *Strickland v. Washington*, 466 U.S. 668 (1984), in rejecting Armond's ineffective assistance claim, as opposed to the "gist of a meritorious constitutional claim" preliminary standard set forth in Illinois law.[2] The Illinois Supreme Court

---

[2]     *See, e.g.*, D.E. 14, Ex. Q at 3 ("This Court should grant leave to appeal because the Appellate Court utilized the wrong standard in analyzing Mr. Armond's first-stage post-conviction claims. Specifically, where a petition raises an ineffective assistance of counsel claim during first-stage post-conviction proceedings, the "gist of a meritorious constitutional claim" standard should apply, as required by *People v. Edwards*, 197 Ill. 2d 239, 245, 757 N.E.2d 442 (2001). The Appellate Court erred when it analyzed Mr. Armond's claims under the two-prong standard enunciate [sic] by *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).").

5

denied his petition for leave to appeal. (D.E. 14, Ex. R.) On July 14, 2005, Petitioner filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, that is before the Court.

I.     Standard of Review

The grounds upon which a federal district court may issue a writ of habeas corpus for a person imprisoned pursuant to a state court criminal judgment are subject to meaningful limits. First, habeas relief can be granted "only on the ground that [a prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court cannot grant habeas relief on the grounds that a state court incorrectly applied state law, except to the extent that such application also violated federal law.

Second, the Court may not provide habeas relief unless Petitioner has exhausted his available remedies in state courts. 28 U.S.C. § 2254(b)(1)(A). Exhausting all state remedies includes presenting each claim on appeal to the Illinois appellate court and in a petition to the Illinois Supreme Court for discretionary review. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hadley v. Holmes*, 341 F.3d 661, 664 (7th Cir. 2003) (holding that the rule applies for purposes of habeas corpus under Section 2254). This rule applies to claims presented in petitions for state post-conviction relief, as well as to claims contained in direct appeals from criminal courts. *See, e.g., White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (*per curiam*).

Third, habeas relief is ordinarily not available for claims that have been "procedurally defaulted" in state proceedings. This means that the Court may not review a claim if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). The Court may excuse procedural default when there is cause for the default and prejudice as a result of the alleged violation of federal law or where a refusal to

consider the claim would result in a fundamental miscarriage of justice. *See Dellinger v. Bowen*, 301 F.3d 758, 766 (7th Cir. 2002). To show cause for a default, Petitioner must offer an excuse that cannot fairly be attributed to him. For example, conduct by a petitioner's counsel that is constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), constitutes cause. However, a claim that, for example, ineffective assistance was sufficient cause for a procedural default can *itself* be procedurally defaulted if it is not properly presented to state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *Dellinger*, 301 F.3d at 766-67.

In order to establish that a fundamental miscarriage of justice has occurred, Petitioner must demonstrate by clear and convincing evidence that, but for the alleged violation of federal law in the state court proceedings, no reasonable juror would have convicted him. *Id.*, 301 F.3d at 767 (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). In other words, the exception is "limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Id.* Due to the prior finding of guilt the factfinder, a petitioner alleging a fundamental miscarriage of justice bears the burden of proof. *See Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003).

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 110 Stat. 1214 (1996), placed additional restrictions on federal habeas relief for persons imprisoned pursuant to the judgment of a state court. Prior to AEDPA's enactment, "federal courts disregarded the state court's legal conclusions and reached independent judgments on the issues presented to them, but deferred to the state court's findings of fact." *Agnew v. Leibach*, 250 F.3d 1123, 1128-29 (7th Cir. 2001). Under AEDPA, the state court judgment must violate federal law and it must either be "contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or be "based on an unreasonable

7

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.§ 2254(d). A judgment is "contrary to" Supreme Court precedent if the state court made a statement of law inconsistent with one made by the Supreme Court, or if the state court decided a case with "materially indistinguishable facts" differently from the Court. *Huynh v. Bowen*, 374 F.3d 546, 548 (7th Cir. 2004) (citing *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).

A state court decision is an "unreasonable application of" clearly established law "'if the state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Cossel v. Miller*, 229 F.3d 649, 654 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 413). As the Seventh Circuit has repeatedly instructed, the unreasonable application prong of Section 2254(d)(1) is "a difficult standard to meet." *Floyd v. Hanks*, 364 F.3d 847, 850 (7th Cir. 2003) (citation omitted); *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (citation omitted); *see also Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (holding that "unreasonable," for the purpose of Section 2254(d)(1), means "something like lying well outside the boundaries of permissible differences of opinion").

In this regard, the Supreme Court has repeatedly instructed that an unreasonable application of federal law is something more than simply an application that the habeas court might not itself have reached in the first instance or that the habeas court thinks is incorrect. Thus, for example, in *Woodford v. Viscotti*, 537 U.S. 19, 24-25 (2002), the Supreme Court explained the role a federal habeas court is to play:

> Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied *Strickland* incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. An *unreasonable* application of federal law is different from an *incorrect* application of federal law. The Ninth Circuit did not observe this distinction,

but ultimately substituted its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d).

(internal citations and quotation marks omitted; emphases in *Woodford*); *accord, e.g., Williams*, 529 U.S. at 410 ("[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."). In summary, the court is not permitted to substitute its independent judgment as to the correct outcome; it must only ask if the state-court decision was reasonable. *See Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000); *Huynh*, 374 F.3d at 548 ("An unreasonable application is not simply what we might deem to be an incorrect or erroneous application of federal law.").[3]

II.     Issues Raised in the Petition

Petitioner seeks habeas relief on the grounds that he was convicted on the basis of evidence that should have been excluded, that he did not receive a fair trial due to judicial bias, and that he received ineffective assistance of counsel. These contentions are meritless, as explained below.

A.     Admission of Line-up Identification

Petitioner first argues that the trial court should have suppressed line-up identification evidence. (*See, e.g.*, D.E. 1 at 5.) According to Petitioner, the line-up identification was the fruit of an illegal seizure. (*See, e.g., id.* at 5, 7, 10.) This claim was not presented to the Illinois Supreme Court and it is thus defaulted. (D.E. 14, Exs. E & Q; *accord O'Sullivan*, 526 U.S. at

---

[3]     Although the Supreme Court has repeatedly instructed that there is a difference between merely an incorrect application of a Supreme Court precedent and an objectively unreasonable one (only the latter being enough to ground habeas relief), in this case the distinction is not material.

845; *Hadley*, 341 F.3d at 664; *White*, 192 F.3d at 608.)[4] Because it is defaulted, it cannot provide a basis for habeas relief.

Petitioner has not identified sufficient cause for defaulting this claim. Trial counsel moved to suppress the line-up identification, but this issue was not raised on direct appeal. (D.E. 14, Ex. A.) Petitioner did not argue in his amended post-conviction relief petition that appellate counsel was ineffective for failing to raise this issue on direct appeal (D.E. 14, Ex. J), nor did he present this issue in the appeal relating to the denial of his request for post-conviction relief or in the second petition for leave to appeal to the Illinois Supreme Court following denial of his post-conviction appeal. (D.E. 14, Exs. M & Q.) In addition, Petitioner has not demonstrated that the default should be excused to avoid a "fundamental miscarriage of justice." The Seventh Circuit has made it clear that this exception addresses claims of actual innocence, not procedural infirmities. *Dellinger*, 301 F.3d at 767. Petitioner has not provided any compelling evidence of actual innocence. Even if the line-up evidence had been suppressed, the court could have

---

4       Moreover, and independently, it is by no means clear that Petitioner *ever* properly presented this claim even to the Illinois trial court. This claim was first presented, at least in general form, in Petitioner's original post-conviction petition. (D.E. 14, Ex. G at 38-41.) Under Illinois law, amended pleadings ordinarily supersede prior pleadings. *See, e.g., Snitowsky v. NBC Subsidiary* (WMAQ-TV), 696 N.E.2d 761, 769 (Ill. App. Ct. 1998) ("Amended pleadings ordinarily supersede prior pleadings.") (citation omitted). Petitioner did not present the line-up evidence claim in his amended petition. Instead, Petitioner argued that trial counsel was ineffective because he made an erroneous statement that he was seeking to have a statement made by Respondent suppressed. (D.E. 14, Ex. J at 20.) The amended petition does not press the underlying constitutional claim that the line-up identification should be suppressed because it allegedly was the product of an unreasonable search and seizure. As a result, there is a substantial question (which this Court need not resolve) of whether the claim ever was properly presented to the Illinois trial court. *See also People v. Marsan*, 637 N.E.2d 540, 542 (Ill. App. Ct. 1994) ("A post-conviction proceeding is a collateral attack on a final judgment and is limited to issues which have not been and could not have been previously adjudicated" on direct appeal) (citing *People v. Owens*, 544 N.E.2d 276 (Ill. 1989)). The Court further notes that in addition to never having been presented to the Illinois Supreme Court, the claim (whatever its status in the trial court) also was never presented to the Illinois appellate court in the appeal from the denial of post-conviction relief. (*See* D.E. 14, Ex. M.) This serves to reinforce its defaulted nature.

10

reasonably found Petitioner guilty on the basis of other evidence. The record reflects that the court relied not only upon the line-up identification, but also the testimony of the victims at trial, whose incriminating testimony the court found credible. (*See* D.E. 14, Ex. D at 4-6; *accord id.*, Ex. H at 6 (trial judge stating, in rejecting Petitioner's claim that the State failed to prove him guilty beyond a reasonable doubt, that "[t]he evidence was clear and convincing beyond any reasonable doubt" that Petitioner was guilty).)

B.    Unfair Trial Due to Bias and Prejudice of Trial Judge

Petitioner claims that he was denied a fair and impartial trial because the judge was biased, in that the judge unfairly sympathized with the victims, who, allegedly like the judge and his wife, were an interracial couple. (D.E. 1 at 11-12; D.E. 14, Ex. G at C71, C73.) This contention is meritless and is not, as explained below, any basis to vacate the conviction.

First, this claim is procedurally barred because it was never presented to the Illinois Supreme Court in a petition for leave to appeal. *See, e.g.*, *O'Sullivan*, 526 U.S. at 845; *Hadley*, 341 F.3d at 664; *White*, 192 F.3d at 608. As with his line-up claim, Petitioner has not identified any cause for defaulting the claim, nor has he met the requisite proof for demonstrating a "fundamental miscarriage of justice" within the meaning of applicable precedent.

Second, and independently, the claim is substantively meritless in any event. To begin, Petitioner has never provided any evidence for the first premise of his claim—namely, that Judge Stanley Sacks and his wife are an interracial couple. (*See* D.E. 14, Ex. G (post-trial petition) at C71 and C73; *id.*, Ex. P (Illinois appellate court post-trial petition) at 3 ("Defendant provided no support for his allegation that the judge was white and his wife was black.").)

In addition, and independently, the Illinois appellate court reasonably found that Petitioner presented insufficient evidence in his citation of the trial judge's few comments from

11

the trial to present any colorable claim of judicial bias against Petitioner. (*See id.* at 13.)

("[D]efendant's allegation that the judge was biased against him failed to state [even] the gist of

a constitutional claim."). As the Illinois appellate court stated, the trial court's limited comments

during trial that victim Anderson was black and victim Martinez was white, as well as comments

that Petitioner held them at gunpoint based on their interracial relationship, was not evidence of

bias, even if one assumes *arguendo* that Judge Sacks and his wife are a racially-mixed couple.

(*Id.*) The Illinois appellate court reasonably concluded, consistent with the trial testimony, that

the trial court had merely summarized

> the facts and the evidence gathered from the testimony at trial. Martinez specifically
> stated that when defendant robbed him, defendant commented . . . that Martinez was
> "taking" the black women. *See People v. Jackson*, 205 Ill. 2d 247, 277 (2002)
> (allegations of judicial bias must be evaluated in terms of the judge's specific reaction to
> the events taking place and in the entire context of the comment).

(*Id.* at 13-14.) After having reviewed the comments from the transcript excerpts that Petitioner

offers, this Court agrees with the assessment of the Illinois appellate court concerning the

comments. Even if one assumes that Judge Sacks is a member of an interracial marriage, his few

comments relate to evidence from the trial and do not suggest that Judge Sacks was biased

against Petitioner.[5]

---

[5]     In his habeas petition, Petitioner asserts without specificity to Judge Sacks having
been removed from the bench for misconduct in 2004. (See D.E. 1 at C3, D.E. 16 at 3.) As
Petitioner provides no evidence in support of this position, it is not a basis to reverse his criminal
conviction. Moreover, and entirely independent of that procedural defect, Petitioner appears to
be referring to a 2004 incident—well-known to most members of the criminal law bar in
Chicago—which prompted the Honorable Timothy Evans, Chief Judge of the Circuit Court of
Cook County, Illinois, to condemn Judge Sacks for indecorous conduct. This condemnation
occurred after Judge Sacks shouted at and used profanity against a police officer-defendant
convicted of criminal misconduct. *See generally* October 14, 2004 Press Release of the
Honorable Timothy C. Evans regarding Associate Judge Stanley J. Sacks (criticizing Judge Sacks
for his "angry outburst and use of profanity in a trial," ordering Judge Sacks to be mentored by a
judicial colleague, directing that Sacks would be removed temporarily from judicial duties in the
criminal courts, and explaining that the reassignment would be delayed for approximately one

12

The Court also notes that the cases Petitioner proffers are inapposite. In *Tumey v. Ohio*, 273 U.S. 510 (1927), Chief Justice Taft taught that due process was violated where the judge in an Ohio criminal system was financially motivated to convict defendants, in that he was only paid for his services in connection with the trial upon conviction of the defendant involved. *Id.* at 520. Where the presiding judicial officer had a direct, personal, pecuniary interest in the outcome of the trial, due process was violated. *Id.* at 523. Petitioner does not allege that such a dynamic was present here. Similarly, *People v. Diaz*, 275 N.E.2d 210 (Ill. App. Ct. 1971), involved a cognizable judicial bias situation, but the trial judge in that bench-trial case proclaimed on three separate occasions that the defendant was guilty of the charged crime before the close of all the evidence, including once before the defendant even had a chance to begin putting on his case. *Id.* at 212. The Illinois appellate court held that such pre-judgment of the evidence (including forthcoming evidence that had not even been heard) was antithetical to a fair trial. *Id.* Judge Sacks exhibited no signal of such pre-judgment here, but instead made limited comments that stemmed from and were responsive to the evidence he heard, including evidence of a racially intolerant comment that came from the mouth of Petitioner.[6]

---

week "to allow him [Judge Sacks] to finish hearing a capital murder case"). (This press release is available at www.cookcountycourt.org/pressreleases.) Petitioner offers nothing even to suggest (nor is this Court aware of any fact to suggest) that the angry outburst and use of profanity during a different trial can fairly be seen as evidence of bias against Petitioner. The Court also notes that Judge Sacks was returned to active service as a judge in the Criminal Division of the Circuit Court of Cook County, where he currently serves. *See generally* February 7, 2005 Press Release of the Honorable Timothy C. Evans (reflecting that, effective that date, "Judge Stanley Sacks returned to the Criminal Division after a temporary four-month assignment in the Domestic Relations Division," and further stating that "Judge Sacks completed anger management counseling following his use of profanity while rendering a verdict last year").

[6]     In his judicial bias contentions, Petitioner also vaguely complains that the trial judge used "purjuried [sic], and inconsistent testimonies" to find him guilty. (D.E. 1 at C8.) This claim was never presented to the Illinois Supreme Court and it is therefore procedurally barred. In addition, and independently, Petitioner is, in essence, arguing with the credibility

13

In summary, Petitioner's judicial bias claim is procedurally defaulted and thus provides no basis for relief. It also independently is meritless.

    C.    Ineffective Assistance of Counsel

        1.    Failure to Present Rebuttal Evidence Undermining The Credibility of The State's Key Witnesses

Petitioner argues that he was denied the effective assistance of trial counsel because his trial counsel did not offer rebuttal evidence to Martinez's and Anderson's testimony that Petitioner made admissions and statements evidencing consciousness of guilt to them. This claim was first raised on direct appeal (D.E. 14, Ex. A at 10) and was also presented to the Illinois Supreme Court in a petition for leave to appeal. (D.E. 14, Ex. E at 10.) As a result, and as Respondent acknowledges, this issue is properly before this Court. (D.E. 15 at 16.)

To receive habeas relief on this claim, Petitioner must show that the appellate court either applied the wrong United States Supreme Court standard to the ineffective assistance of counsel claim or applied the correct standard in an objectively unreasonable manner. *See* 28 U.S.C. § 2254(d)(1); *Bell v. Cone*, 535 U.S. 685, 694 (2002). In determining reasonableness, this Court must afford great deference to the state courts' application of the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2003). As the Seventh Circuit has repeatedly instructed, "'*only a clear error* in applying *Strickland* would support a writ of habeas corpus,'" *id.* (quoting *Dixon v. Snyder*, 266 F.3d 693, 700-01 (7th

---

assessments of the trial court. On the record in this case, the trial judge was entitled to credit the substantial incriminating testimony, despite the minor inconsistencies and tensions Petitioner offers, and Petitioner's complaints about the trial court's credibility assessments are not a basis to reverse the judgment on habeas review. *See, e.g., United States ex rel. Wandick v. Chrans*, 869 F.2d 1084, 1089 (7th Cir. 1989) (collecting cases and holding that the "[c]redible testimony of one identification witness is sufficient to support a conviction"); *see also id.* ("As a federal habeas court, we have no license to redetermine the credibility of a witness whose demeanor has been observed by a state trial court, and not by us").

Cir. 2001) (emphasis in *Murrell*), such that the assessment of the state courts' regarding

*Strickland* was not even "'minimally consistent with the facts and circumstances of the case.'"

*Id.* at 1112 (quoting *Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir. 1999)). Furthermore, a

federal habeas court must presume that all the state court's factual determinations, including

credibility determinations, are correct, unless rebutted by clear and convincing evidence. *Id.* at

1112 (citing *Collier v. Davis*, 301 F.3d 843, 848 (7th Cir. 2002)).

In *Strickland*, the Supreme Court established the framework under which claims of

ineffective assistance of counsel are analyzed:

> First, the defendant must show that counsel's performance was deficient. This
> requires showing that the counsel made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the
> defendant must show that the deficient performance prejudiced the defense. This
> requires showing that counsel's errors were so serious as to deprive the defendant
> of a . . . a trial whose result is reliable. Unless a defendant makes both showings,
> it cannot be said that the conviction . . . resulted from a breakdown in the
> adversary process that renders the result unreliable.

*Id.*, 466 U.S. at 687.

To satisfy the first prong, Petitioner would need to show that defense "'counsel's

representation fell below an objective standard of reasonableness.'" *Gallo-Vasquez v. United

States*, 402 F.3d 793, 798 (7th Cir. 2005) (quoting *Strickland*, 466 U.S. at 688)). The Seventh

Circuit teaches that when considering the effectiveness of an attorney's performance, a district

court must "'indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). A defendant

"must direct . . . [the Court] to the specific acts or omissions which form the basis of his claim.

The court must then determine whether, in light of all the circumstances, the alleged acts or

omissions were outside the wide range of professionally competent assistance." *Fountain v.

United States*, 211 F.3d 429, 434 (7th Cir. 2000) (internal quotation marks and citation omitted).

15

Courts are to "indulge a strong presumption" of competence such that "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted). A court should not simply second-guess a defense counsel's assistance after a conviction or adverse sentence has occurred, because the benefit of hindsight is likely to distort the complexity of the challenges presented and the reasonableness of a counsel's decision on a real-time basis. *See id.* ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."). Most criminal cases result in convictions; that does not mean that most defense counsel are acting in a constitutionally deficient or unreasonable manner, or are making constitutionally defective strategic judgments. *See, e.g., Fountain*, 211 F.3d at 434 ("[M]any trial determinations, like so many other decisions that an attorney must make in the course of representation, are a matter of professional judgment. Thus, we must resist a natural temptation to become a 'Monday morning quarterback.'") (internal punctuation and citations omitted).

For purposes of the second prong of the *Strickland* analysis, a petitioner must demonstrate prejudice by some "'reasonable probability.'" *Gallo-Vasquez*, 402 F.3d at 798 (quoting *Strickland*, 466 U.S. at 694). Put differently, Petitioner must demonstrate "'a probability [of prejudice] sufficient to undermine confidence in the outcome'" of the case. *Id.* (quoting *Strickland*, 466 U.S. at 694). This probability is determined under the totality of circumstances. *See Strickland*, 466 U.S. at 695. This standard does not require the petitioner to convince the court that his attorney's ineffectiveness more likely than not altered the outcome in

16

the case. *Id.* at 693.

The Illinois Appellate Court determined that Petitioner was not denied effective assistance of counsel at trial under the standard set out in *Strickland,* 466 U.S. at 687. In reaching its decision, the state appellate court identified *Strickland* as the governing legal standard and applied that standard to Petitioner's claim. (D.E. 14, Ex. P at 9.) The question before the Court, therefore, is whether *Strickland* was reasonably applied.

Petitioner does not dispute that his defense counsel informed the court at trial of the time periods during which Petitioner was in custody, nor does he dispute that the trial court/factfinder took notice of these facts, which were themselves reflected in the court's orders. (*See* D.E. 14, Ex. D at 6.) Petitioner's objection to trial counsel's performance is that, instead of formally introducing evidence that Petitioner was in custody, such as jail records, Petitioner made the argument to the court during closing argument. (D.E. 1 at 6.) Given that the trial court/factfinder took express judicial notice of the evidence that Petitioner highlights as not having been introduced (which, again, was contained in the court's own orders), whatever academic shortcoming that defense counsel theoretically committed in failing to formally introduce the evidence is of no practical consequence. Thus, Petitioner cannot show that the Illinois appellate court erred or was unreasonable in its assessment that Petitioner's counsel did not perform in an objectively unreasonable manner. (*See* D.E. 14, Ex. D at 6 ("The record indicates that the trial court indeed considered the very evidence that defendant argues his counsel failed to introduce to the court.")

Furthermore, and independently, Petitioner cannot satisfy the second prong of *Strickland* and show prejudice because, in spite of the court records not having been formally introduced into evidence, the trial court accepted as fact that Petitioner was in custody during the summer of

17

1997 and 1998. The trial court/factfinder determined that the witnesses were sufficiently vague about the time-frame of their conversations with Petitioner that his presence in custody during those summers did not cast doubt on the credibility of the witnesses or on their testimony concerning Petitioner's admissions and statements evidencing consciousness of guilt. (*Id.* at 4-6.) A second reason that Petitioner cannot show prejudice is that the other evidence presented at trial—the line-up identification of Petitioner and the witnesses' testimony concerning the incident—were sufficient to overcome reasonable doubt. When it considered this claim in Petitioner's petition for post-conviction relief, the trial court noted that "[t]he evidence was clear and convincing beyond any reasonable doubt that [Petitioner] robbed two people." (D.E.14, Ex. H at C107.) Consequently, the court dismissed the petition as "being frivolous without merit." (*Id.* at C108.) This issue was also considered by the Illinois appellate court on direct appeal. In rejecting this claim, the court noted that, in presenting this claim, "[Petitioner] does not challenge the sufficiency of the evidence to support his convictions, and the trial judge made credibility determinations regarding the witnesses based upon the evidence before him." (D.E. 14, Ex. D at 6.) Given the other evidence, the Court does not find that Petitioner has shown the requisite prejudice. *See Gallo-Vasquez*, 402 F.3d at 798 (quoting *Strickland*, 466 U.S. at 694).

2. Failure to Call Two Potential Witnesses

Petitioner suggests that his trial counsel was deficient for not calling two potential witnesses, Ray Henderson and Tommie Edwards, to testify on his behalf. This claim was raised in Petitioner's post-conviction relief petition. (D.E. 14, Ex. J at 22-26.) Respondent acknowledges that this issue is properly before the Court. (D.E. 15 at 16.)

In his amended petition for post-conviction relief, Petitioner asserted that the robbery arose out of a drug deal gone bad and that he was not involved. (D.E. 14, Ex. J at 26.) Affidavits

18

from Henderson and Edwards were offered in support of the claim that they were witnesses who should have been called and as proof that counsel's performance fell below an objective standard of reasonable assistance. (D.E. 14, Ex. J, at A-5, B-3.) Petitioner also argues that he was prejudiced by the ineffective counsel because "the case would have been different" if the witness testimony had been introduced as evidence. (D.E. 1 at 6.)

*Strickland* commands that Petitioner must show both that counsel's performance fell below an objective standard of reasonableness and that counsel's poor performance prejudiced the outcome of the proceedings. Trial counsel's decisions whether to present certain witnesses ordinarily receive great deference because they are strategic judgment calls and because of the distorting effect of hindsight in making a *post hoc* assessment of counsel's strategic assessments. *Strickland*, 466 U.S. at 689; *Wright v. Walls*, 288 F.3d 937, 946 (7th Cir. 2002).

This Court cannot conclude that it was unreasonable for defense counsel to decline to call these witnesses. As the Illinois appellate court and trial court both found, Petitioner admitted in his post-conviction petition that Edwards was a "known 'drug dealer'" (D.E. 14, Ex. G at C46). (*See id.*, Ex. P at 10-11 (Illinois appellate court stating that "[d]efense counsel's decision to not call a known drug dealer as his sole witness on defendant's behalf was trial strategy," and further stating that the decision not to call the witness in the face of likely severe impeachment was "clearly strategi[c]"); *id.*, Ex. H at 6 (similar oral findings of trial judge); *id.*, Ex. G at C46 (Petitioner's post-trial petition stating that "Petitioner's trial counsel was ineffective, wherein counsel failed to call as a witness, and/or subpoena a known 'drug-dealer' whose testimony would have provided and substantiated [sic] he observed the two witnesses/victims, buying

cocaine and that this was not a [sic] armed robbery").[7] While Edwards's testimony *might* have undermined the credibility of the State's witnesses, calling Mr. Edwards quite legitimately could be viewed as a desperate strategy that would likely be understood by the factfinder to reflect substantial doubt about the efficacy of the impeachment that defense counsel would argue had defeated the States's attempt to meet its burden of proving guilt beyond a reasonable doubt. Under the circumstances, this Court could not fairly question defense counsel's strategic decision in this case, even if this were not in the setting of habeas review, where even greater deference is afforded to the judgment of the courts of Illinois on this issue.[8]

---

[7]    In addition to Petitioner's express statement that Edwards was a known drug dealer, the strong sense that one gets from reviewing Edwards's proffered affidavit is that he is a narcotics trafficker, even if he himself does not volunteer that information. In Edwards's version of the operative events, the robbery victims approached him asking where they could find some crack cocaine; inquired whether the available crack cocaine was of good quality; and later, when the robbery victims allegedly returned to express displeasure with the quality of the crack cocaine they had bought (presumably, according to Mr. Edwards, from others), they shared their discontent with Mr. Edwards. (*See* D.E. 1, Ex. B2 (proffered Edwards affidavit).) Even if Mr. Edwards does not come right out and admit he is a drug dealer, this is hardly the sort of background setting that one hopes for as a criminal defense attorney concerning one's star (and perhaps only) witness. More to the point, the Illinois appellate court's holding that a defense attorney's decision not to call such a witness, and instead to rely on cross-examination of the State's two witnesses, was not objectively unreasonable defense strategy, is not subject to legitimate second-guessing by this federal habeas court. *See, e.g., Murrell v. Frank*, 332 F.3d 1102, 1111-12 (7th Cir. 2003) (collecting cases).

[8]    At times, Petitioner suggests in passing that Edwards and Henderson provided newly discovered evidence of his innocence. As the Illinois courts found, this suggestion is baseless. As the Illinois appellate court explained, Petitioner's amended post-trial petition "specifically stated his counsel 'promised to call [Edwards] as [a] rebuttal witness but failed to do so." (D.E. 14, Ex. P at 12 (quoting D.E. 14, Ex. J at 4).) Mr. Henderson's proffered affidavit also stated that Petitioner's counsel told him at trial that counsel would not be calling Henderson as a witness because the case had been won, in that the State's witnesses had been successfully impeached. (*See* D.E. 1, Ex. A-5.) Thus, Petitioner's own proffered affidavit establishes that the putative Henderson testimony was not newly discovered evidence. After having reviewed the applicable portions of the record, this Court finds no basis to disturb the Illinois appellate court's assessment that Petitioner's "newly discovered evidence" claim was factually infirm and meritless.

20

Petitioner also points to the affidavit of Ray Alton Henderson (D.E. 1, Ex. A-5), whom Petitioner also offers as a witness who so clearly should have been called that his trial counsel was constitutionally ineffective in failing to do so. The Henderson affidavit reflects that Petitioner's counsel had Mr. Henderson available at trial, but declined to call Henderson as a trial strategy decision made in light of an assessment of the success of the impeachment of the State's witnesses. (*Id.*) Precedent teaches that courts generally should be loathe to question such choices—*see, e.g., Strickland*, 466 U.S. at 689—and precedent articulates this directive even more forcefully in the context of federal habeas review. *See, e.g., Murrell*, 332 F.3d at 1111-12. The Court finds no basis to disturb the Illinois courts' assessment of this *Strickland* issue. The Illinois appellate court, after examining the Henderson affidavit and the trial record, held that "Henderson's affidavit only stated the victims bought cocaine on the date in question, but was silent as to what time he saw the victims, whether defendant robbed the victims, or whether defendant was present at the relevant time." (D.E. 14, Ex. P at 10.) Petitioner does not challenge any of these assessments, which appear to be clearly correct. The Illinois appellate court concluded that, for these reasons, "Henderson's affidavit provided no exculpatory evidence." (*Id.*) Given applicable standards of factual review, this Court likely cannot fairly question that assessment. However, even if one were to credit Petitioner's objection that Henderson's testimony could have potentially undermined the witnesses' testimony about *why* they were at the scene of the robbery (*i.e.*, to buy drugs, as opposed to liquor), that does not call into question the propriety of the Illinois appellate court's assessment of the *Strickland* issue: that defense counsel was not constitutionally ineffective in making the strategic call that the better defense called for a focus on the impeachment of the State's witnesses, without calling Henderson to provide, at best, impeachment on a relatively collateral subject. *See, e.g., Dixon*, 266 F.3d at 700-01. In this

regard, the Court notes that, Mr. Henderson, like Mr. Edwards, in his affidavit and on his own version of things demonstrated a ready knowledge of crack cocaine purchasers and sellers. Again, such a witness is not the sort that one can credibly fault a defense attorney for not calling in the setting of this case, particularly where the witness at most can offer non-essential impeachment and cannot even conclusively claim that the defendant was not guilty of the crime at issue. Every *Strickland* situation turns on its own facts, of course, as precedent teaches, but suffice to say that the assessment of the Illinois courts of the *Strickland* issue with respect to the decision of whether to call Mr. Henderson is not an objectively unreasonable one. (See D.E. 14, Ex. P at 11 ("Defense counsel's strategy at trial was to draw the court's attention to weaknesses in the State's evidence identifying defendant as the offender, and defense counsel thoroughly cross-examined the State's witnesses.").[9]

---

[9]    Petitioner argues that the trial court and Illinois Court of Appeals, in adjudicating his post-conviction claims and in rejecting his appeal, applied the wrong standard of review under Illinois post-conviction procedures. This claim appears to track the state-law claim that Petitioner presented to the Illinois Supreme Court in his second petition for leave to appeal. Assuming that the argument was properly presented to the Illinois courts in a full round of review, as required by *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) and similar cases, this argument is still no basis for federal habeas relief. *See, e.g., Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) ("Federal habeas relief is only available to a person in custody in violation of the United States Constitution or laws or treaties of the United States, *see* 28 U.S.C. § 2254(a), and is unavailable to remedy errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)"); *Evans v. Leibach*, No. 03 C 2320, 2003 WL 21730116, at *3 n.2 (N.D. Ill. July 18, 2003) (Aspen, J.) ("Petitioner's contention that the [Illinois] appellate court should have applied a 'gist of a constitutional claim' standard instead of a 'substantial showing' standard of review fails because the existence of this component of a post-conviction proceeding is a product of Illinois state law."). The Illinois courts applied *Strickland v. Washington, supra*, in rejecting Petitioner's ineffective assistance claims on post-conviction review. That is the applicable standard articulated by the Supreme Court for evaluating such claims, and the unanimous conclusion of every Illinois judge who has looked at the issue—namely, that Petitioner's ineffective assistance argument failed to state even the gist of a constitutional claim and was frivolous and patently without merit (D.E. 14, Ex. P at 6, 8-9)—is not subject to reversal under applicable federal habeas standards, as explained at length above. *See, e.g., Murrell v. Frank*, 332 F.3d 1102, 1111-12 (7th Cir. 2003) (collecting cases).

22

## CONCLUSION

For the reasons stated above, federal habeas relief is not warranted. Consequently, the

Petition for a Writ of Habeas Corpus is denied.

So ordered

Mark Filip
United States District Judge
Northern District of Illinois

Date:  10-18-05